UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/12/2015
```

HANNA Z. HANNA,

                              Plaintiff,

    -v-

                                                    No. 14-cv-7016 (RJS)
                                                    OPINION & ORDER

GREGORY O'CONNELL, ESQ.,

                              Defendant.

RICHARD J. SULLIVAN, District Judge:

Plaintiff Hanna Z. Hanna, a former attorney and resident of New Jersey proceeding *pro se*,

brings this diversity action pursuant to 28 U.S.C. § 1332 alleging, *inter alia*, claims of malpractice

and defamation against his former lawyer and New York resident, Defendant Gregory O'Connell.

Now before the Court is Defendant's motion to dismiss the complaint on the grounds that it is time

barred and fails to state a claim upon which relief can be granted.  For the reasons that follow, the

Court GRANTS Defendant's motion in its entirety.

I. BACKGROUND

A. Facts[1]

Plaintiff's claims stem from events that occurred during his 1995 criminal prosecution for

submitting fraudulent applications to the Immigration and Nationalization Service ("INS"), which

---

[1] The following facts, unless otherwise noted, are drawn from the complaint (Doc. No. 1 ("Compl.")) and from the
documents attached thereto, incorporated therein by reference, or otherwise integral to Plaintiff's claims, as well as
matters of which this Court may take judicial notice.  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d
Cir. 2007).  In resolving the instant motion, the Court has also considered Defendant's memorandum of law in support
of his motion to dismiss (Doc. No. 29 ("Mem.")), Plaintiff's memorandum of law in opposition (Doc. No. 33
("Opp'n")), and Defendant's reply (Doc. No. 34 (("Reply")), as well as the affidavits and exhibits attached thereto
(Doc. Nos. 28, 32).

is now known as the U.S. Citizenship and Immigration Services. (Compl. at 12–13; *see also United States v. Abrahim, et al.*, No. 95-cr-1204 (FB) (E.D.N.Y.) ("EDNY Case").) Specifically, Plaintiff states that Defendant, Plaintiff's retained lawyer in the 1995 criminal proceeding, engaged in plea negotiations with the government ultimately resulting in an agreement whereby Plaintiff agreed to plead guilty to a misdemeanor count of aiding and abetting a single violation of 8 U.S.C. § 1306(c). (*See* Compl. ¶¶ 24, 30.) Plaintiff pleaded guilty on May 28, 1997 before the Honorable Frederic Block, United States District Court Judge for the Eastern District of New York. (EDNY Case, Doc. No. 136.) During Plaintiff's plea conference, Judge Block informed Plaintiff that he faced a maximum term of imprisonment of six months and that a criminal conviction might affect his law license. (Declaration of Thomas A. Leghorn, dated Dec. 15, 2014, Doc. No. 28, Ex. C ("Plea Tr.") at 20:8, 17–25.) Nonetheless, Plaintiff claims that, prior to his decision to plead guilty, and notwithstanding Judge Block's statements, Defendant promised Plaintiff that his sentence would be no more than two or three months of probation and that his conviction would not affect his law license. (Compl. ¶ 24.) On February 27, 1997, Judge Block sentenced Plaintiff to one year of probation and imposed a $1,000 fine. (EDNY Case, Doc. No. 148.)

Following the criminal proceedings, and after Defendant's representation of Plaintiff had ended, Plaintiff appeared before the New York State Bar's disciplinary authority, the Disciplinary Committee for the First Department ("Disciplinary Committee"). In light of Plaintiff's misdemeanor conviction in the criminal matter – which involved assisting immigrants in obtaining permanent resident status by filing fraudulent applications for adjustment of immigration status based upon false claims of marriage to American citizens – the Disciplinary Committee suspended Plaintiff's law license for a period of three years in 2001. (*See* EDNY Case, Doc. No. 187 at 3; *see also In the Matter of Hanna Z. Hanna*, 725 N.Y.S.2d 26 (N.Y. App. Div. 2001). Plaintiff has

not yet been reinstated, *see List of Currently Disciplined Practitioners*, U.S. Dep't of Justice (July 22, 2015), http://www.justice.gov/eoir/list-of-currently-disciplined-practitioners, and asserts that he has been disbarred (Compl. ¶¶ 30–32).

Plaintiff filed a *pro se* "Motion for Expungement of Record" on June 13, 2005 (EDNY Case, Doc. No. 179), which was summarily denied by Judge Block (EDNY Case, Doc. No. 180). On December 18, 2009, Plaintiff filed a *pro se* action for a writ of *coram nobis* (*Hanna v. United States*, No. 09-cv-5538 (FB) (E.D.N.Y.), Doc. No. 1), and on January 25, 2010 he filed a *pro se* "Supplemental Motion to Vacate" his original criminal conviction (EDNY Case, Doc. No. 186). Judge Block denied both applications in a single opinion on May 28, 2010. (*See* EDNY Case, Doc. No. 187.)

B.  Procedural History

Plaintiff and his spouse, Bahiga Hanna, commenced this action against multiple defendants in the Southern District of New York on August 28, 2014. (Compl.)  On November 14, 2014, during a hearing before the Court, Plaintiff voluntarily dismissed all claims against the Disciplinary Committee of New York City, the United States Attorney's Office for the Eastern District of New York, Assistant United States Attorney Ruth Nordenbrook, and the "Federal Government." (Minute Entry for Proceedings, dated Nov. 11, 2014.)  Additionally, Bahiga Hanna voluntarily withdrew as a Plaintiff in this action via letter, dated November 18, 2015 (Doc. No. 24), and the Court ordered that her claims be dismissed from the lawsuit on November 21, 2014 (*id.*).  Defendant moved to dismiss the action on December 15, 2014, arguing that Plaintiff's claims are time barred or, alternatively, fail to state a claim upon which relief can be granted.  (Doc. No. 27.)  The motion was fully briefed on January 26, 2015.  (Doc. No. 34.)

II. LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded allegations contained in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Grandon v. Merrill Lynch & Co.*, 147, F.3d 184, 188 (2d Cir. 1998). To state a legally sufficient claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court notes that where a plaintiff proceeds *pro se*, a court must liberally construe the complaint and "'interpret [it] to raise the strongest arguments that [it] suggests.'" *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Even after the Supreme Court's ruling in *Iqbal*, which imposed heightened pleading standards for all complaints, *pro se* complaints are to be liberally construed. *See Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009). Nevertheless, dismissal of a *pro se* complaint is appropriate where a plaintiff has clearly failed to meet minimum pleading requirements. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997).

III. DISCUSSION

Defendant moves to dismiss Plaintiff's remaining claims in this lawsuit – alleging malpractice, defamation, and a self-titled "Second Cause of Action" – on the grounds that they are time barred, or alternatively, fail to state a claim upon which relief can be granted. The Court will address each point in turn.

A.  Statute of Limitations

As a federal court exercising diversity jurisdiction, the Court must apply New York's statute of limitations to this action.  *See House of Europe Funding I, Ltd. v. Wells Fargo Bank, N.A.*, No. 13-cv-519 (RJS), 2014 WL 1383703, at *14 (S.D.N.Y. Mar. 31, 2014).  Under the New York law, "an action to recover damages for [legal] malpractice, . . . regardless of whether the underlying theory is based in contract or tort, . . . must be commenced within three years" of the alleged malpractice.  N.Y. C.P.L.R. § 214(6) (McKinney 1996).  Here, Plaintiff alleges that Defendant's bad advice during plea bargaining in 1997 caused him to receive a higher sentence with greater collateral consequences than Defendant had represented.  (Compl. ¶¶ 23–24.)  However, Plaintiff notes that Defendant's representation terminated on March 6, 1998, at the conclusion of the criminal proceeding.  (*Id*. ¶ 25; *see also* EDNY Case, Doc. No. 148.)  The intervening sixteen years clearly exceed the limitations period set forth in the state statute, and absent extraordinary circumstances, Plaintiff's claims should be time barred.

Plaintiff, acknowledging that substantial time has elapsed, attempts to salvage his malpractice claim by arguing that the statute of limitations either (1) has not yet elapsed because Plaintiff did not become aware of the extent of his damages until last year when the Circuit denied his request for panel rehearing or rehearing *en banc* in the appeal of Plaintiff's 1995 criminal case (Opp'n 5; *see* Compl. Ex. A), or (2) was tolled by the continuing violations doctrine (Opp'n 4–6).  But New York law clearly provides that the three year statute of limitations for a legal malpractice action begins when the malpractice occurs, not when an individual discovers the malpractice or understands its full consequences.  *See Hoffenberg v. Hoffman & Pollok*, 288 F. Supp. 2d 527, 536 (S.D.N.Y. 2003) (citations omitted).  Moreover, the continuing violations doctrine does not apply in this matter – where the alleged malpractice ended, at the latest, following the conclusion of the

5

criminal case in 1998 – since "absent any details of new discrete acts, *rather than the effects of past acts*, . . . [a] plaintiff's allegations are insufficient to establish a continuing violations claim." *Donas v. City of New York*, 878 N.Y.S.2d 360, 361 (App. Div. 2009) (emphasis added); *see also Shumsky v. Eisenstein*, 96 N.Y.2d 164, 170–71 (2001) (finding that "the continuous representation toll . . . end[s] once the client is informed or otherwise put on notice of the attorney's withdrawal from representation" and holding that an attorney's failure to return his client's telephone calls was "sufficient notice that the representation had ceased"). Indeed, Plaintiff's complaint acknowledges the finite period of Defendant's representation and asserts that "Plaintiff has retained other attorneys" since the conclusion of the criminal case. (Compl. ¶ 25.)

Finally, Plaintiff's claim for defamation is similarly time barred. Under New York law, a plaintiff must commence an action for defamation within one year of the defamatory statement's publication to a third party. *See* N.Y. C.P.L.R. § 215(3) (McKinney 1996); *see also Firth v. New York*, 98 N.Y.2d 365, 369 (2002). Here, even if Plaintiff's claim for defamation is based on unidentified statements made during proceedings related to Plaintiff's suspension from the practice of law in 2001, and not his earlier criminal conviction, the defamation claim would still be more than a decade old and, therefore, is time barred under the statute.

### B. Failure to State a Claim

Even if Plaintiff's claims were not time barred, they would still fail to state a claim upon which relief can be granted.

### 1. Legal Malpractice

Under New York Law, a plaintiff alleging legal malpractice must demonstrate that (1) his attorney was negligent, (2) that the negligence was a proximate cause of the injury, and (3) that he suffered actual and ascertainable damages. *See Rubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004)

(citing *McCoy v. Feinman*, 99 N.Y.2d 295, 301–02 (2002)).  Further, "'[t]o state a cause of action for legal malpractice arising from negligent representation in a criminal proceeding, [a] plaintiff must allege his innocence or a colorable claim of innocence of the underlying offense, for so long as the determination of his guilt of that offense remains undisturbed, no cause of action will lie.'" *Abuhouran v. Lans*, 269 Fed. App'x 134, 135 (2d Cir. 2008) (quoting *Carmel v. Lunney*, 70 N.Y.2d 169, 173 (1987)).

Here, Plaintiff claims that the malpractice alleged occurred in the course of plea negotiations in the 1995 criminal proceeding.  (Compl. ¶ 24.)  Accordingly, under New York law, he must assert at least a colorable claim of innocence to state a claim in this civil action.  But Plaintiff voluntarily plead guilty before Judge Block in the Eastern District of New York, and despite extensive post-sentencing submissions, Plaintiff's conviction remains undisturbed.

Moreover, the thoroughness of Judge Block's discussion with Plaintiff during his plea conference forecloses any claim that Plaintiff is actually innocent, that the plea was not voluntary, or that Defendant's negligence was the proximate cause of Plaintiff's injury.  As reflected in the transcript of Plaintiff's guilty plea, Judge Block explained that the crime to which Plaintiff agreed to plead guilty "carrie[d] a maximum term of imprisonment of up to six months," a fine of "up to $5,000," and "other possible penalties [including] suspension or disbarment."  (Plea Tr. at 20:5–18.)  Further, Plaintiff stated, under oath, that he understood the sentence that could be imposed in the case and that he was "aware of some problems [he] could have in terms of [his] law license."  (*Id.* at 20:7–25.)  Plaintiff also acknowledged his understanding that the court, and the court alone, would determine Plaintiff's sentence.  (*Id.* at 22:13–20.)  Finally, Plaintiff stated that no one had "made any promises" to him regarding the consequences of pleading guilty or his sentence in the criminal matter.  (*Id.* at 22:21–23; 25:3–6.)  Following these statements, Plaintiff entered a plea of

"guilty" and stated that he did so of his "own free will." (*Id.* at 25:20–26:2.) The court again inquired whether "anyone . . . made any promises to [Plaintiff] as to what [his] sentence would be," and Plaintiff again responded "no." (*Id.* at 26:6–10.) Plaintiff then allocuted to his crime and admitted that he had "signed [an immigration] acknowledgment, which was false," and submitted it to the INS. (*Id.* at 26:24–27:20.) There can be no doubt, therefore, that Plaintiff's guilty plea remains undisturbed and forecloses any claim of malpractice arising out of Plaintiff's prior criminal proceeding. Accordingly, that cause of action must be dismissed.

### 2. Defamation

Under New York law, the elements of a defamation claim are "a false statement, published [by the defendant] without privilege or authorization to a third party, constituting fault . . . [that] either cause[s] special harm or constitute[s] defamation *per se*." *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169 (2d Cir. 2003) (citing *Dillon v. City of New York*, 704 N.Y.S.2d 1, 5 (1999)). However, apart from Plaintiff's third cause of action conclusorily asserting that he had been "illegally defamed" (Compl. at 12), Plaintiff fails to identify any facts that satisfy the elements of defamation. To be sure, the complaint alleges that Defendant either incorrectly predicted the outcome of sentencing or outright lied about the implications of Plaintiff's guilty plea (*id.* ¶ 24), but at no point does Plaintiff suggest any publication of statements during the course of the representation that could be deemed defamatory remarks.

Moreover, to the extent that Plaintiff claims defamation based on unidentified statements made by Defendant to the Disciplinary Committee, those statements are absolutely privileged and therefore not defamatory under New York law. *See Weiner v. Weintraub*, 22 N.Y.2d 330, 331 (1968) (dismissing a libel action premised upon an allegedly false and malicious complaint filed with the New York Grievance Committee on the grounds that the statements were "absolutely

8

privileged"); *Sinrod v. Stone*, 799 N.Y.S.2d 273, 562 (App. Div. 2005) (finding that any complaints, letters, or statements made to the Grievance Committee are protected by absolute privilege).[2]  Accordingly, the Court must dismiss Plaintiff's defamation claim for failure to state a claim upon which relief can be granted.

### 3.  Plaintiff's Self-Titled "Second Cause of Action"

Finally, Plaintiff's "Second Cause of Action" alleges that "Plaintiff has been deprived of the income of at least $3,000,000.00."  (Compl. at 12.)  This claim is most aptly construed as a claim for damages based on harm flowing from Plaintiff's malpractice and defamation claims, and it suggests no independently cognizable claim.  Accordingly, the Court dismisses Plaintiff's self-titled "Second Cause of Action" for failure to state a claim upon which relief can be granted.

### IV.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendant's motion to dismiss is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 27 and to close this case.

SO ORDERED.

DATED:        August 12, 2015
              New York, New York

                                        _____
                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE

---

[2] "In New York City, the agencies that investigate complaints against lawyers are the Departmental Disciplinary Committee for the First Department (regarding lawyers whose offices are in Manhattan or the Bronx) or the Grievance Committees for the Second, Eleventh, and Thirteenth Judicial Districts (regarding lawyers whose offices are in Brooklyn, Queens or Staten Island)."   *How to Complain About Lawyers and Judges in New York City*, N.Y.C. Bar (June 2012), http://www.nycbar.org/pdf/brochures/Complaints_Lawyers_Judges/complain.pdf.  For purposes of this motion, the Court regards the Disciplinary and Grievance Committees as equivalent.

A copy of this Order has been sent to:

Hanna Z. Hanna
24 Sarno Street
Colonia, NJ 07067